# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| CHERYL OIEN, surviving spouse of Michael Oien; and NIKKI OIEN and TAYLOR OIEN, heirs of Michael Oien,<br><br>Plaintiffs,<br><br>v.<br><br>ROB THOMPSON, individually and d/b/a the 7 Iron, Inc.,<br><br>Defendant. | Civil No. 09-3068 (JRT/RLE)<br><br>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO TRANSFER** |

Joseph R. Ellig and Van R. Ellig, **NYCKLEMOE & ELLIG**, 106 East Washington Avenue, Fergus Falls, MN 56537, for plaintiffs.

Richard A. Clapp, **PEARSON CHRISTENSEN & CLAPP, PLLP**, 24 North Fourth Street, Grand Forks, ND 58206-5758, for defendant.

Cheryl Oien, surviving spouse of Michael Oien, and Nikki and Taylor Oien, Michael Oien's heirs (collectively, "plaintiffs"), brought this action under Minnesota's Dram Shop laws against Rob Thompson, individually and doing business as the 7 Iron, Inc. (collectively, "Thompson"), after Michael Oien died in an automobile accident. The complaint alleges that Thompson served alcohol to Steven Ackert in violation of Minnesota's Dram Shop laws, and that Ackert's subsequent negligent operation of an automobile caused an automobile accident that resulted in Michael Oien's death. Plaintiffs concede that Thompson served the alcohol to Ackert in North Dakota and that the accident took place in North Dakota. Accordingly, Thompson filed a motion to

transfer venue pursuant to 28 U.S.C. § 1404(a), arguing that venue would be more appropriate in the District of North Dakota. (Docket No. 26.) For the reasons stated below, the Court denies the motion.

## BACKGROUND

Rob Thompson is the sole owner and operator of the 7 Iron Bar. (Am. Compl. ¶ I, Docket No. 11.) Thompson is a resident of North Dakota and the 7 Iron Bar is a North Dakota corporation with its principal place of business in North Dakota. (*See* Notice of Removal ¶ 2, Docket No. 1.) The 7 Iron Bar is located on the Bois de Sioux Golf Course. (Pl.'s Statement of Case Ex. 9, Docket No. 44.) The Bois de Sioux Golf Course consists of eighteen holes, the front nine located in Wahpeton, North Dakota, and the back nine located across the Bois de Sioux River in neighboring Breckenridge, Minnesota. (*Id.*) As such, it "is the only public golf course in the nation to have nine holes in one state and nine holes located in another state." (*Id.*) The 7 Iron Bar, which is the club house for the golf course, is located near the river on the North Dakota side of the course. (*Id.*; Defs.' Factual Statement at 1, Docket No. 20.) During the summer months, the 7 Iron operates a beer cart that "travels around the golf course and sells beer or mixed drinks to patrons on the golf course." (Thompson Dep. Tr. at 16, Pl.'s Exhibit List Ex. 27, Docket No. 52.) The beer cart operates on the Minnesota and North Dakota sides of the course. (*Id.*) The Bois de Sioux Golf Course prohibits patrons from consuming outside beverages on the course and requires patrons to purchase all beverages from the 7 Iron. (*Id.* at 76-77.)

Michael Oien and Steven Ackert were friends and worked together at the Minn-Dak Farmers Cooperative, a sugarbeet processing factory near Wahpeton, North Dakota. (Am. Pl.'s Statement of Facts at 1, Docket No. 22; *see* Ex. 1 at 2, Docket No. 39; Pl.'s Br. in Opp'n at 15, Docket No. 38.) At the time of the accident, they both lived across the border in Rothsay, Minnesota. (Pl.'s Br. in Opp'n at 2, Docket No. 38.)

Ackert and some friends from work had made advance arrangements with the 7 Iron Bar to hold a "kegger" at the bar after work on February 5, 2009, to celebrate a co-worker's birthday. (Pl.'s Br. in Opp'n at 2, Docket No. 38; Thompson Dep. Tr. at 34-35, 37-38, Pl.'s Exhibit List Ex. 27, Docket No. 52.) The group's shift ended at 4:00 pm. (Thompson Dep. Tr. at 39-40, Pl.'s Exhibit List Ex. 27, Docket No. 52.) Ackert, Oien, and two of their co-workers arrived at the 7 Iron Bar at approximately 4:30 pm, "and immediately upon arrival began consuming the 8 gallon keg purchased from and served by The 7 Iron." (Am. Pl.'s Statement of Facts at 1, Docket No. 22.) Other members of the group arrived soon thereafter, and by "6:00 p.m. the keg was dry and the group had swelled to a peak of 15 people." (*Id.*) Members of the group, including Ackert, then ordered additional alcoholic beverages. (*Id.*; Thompson Dep. Tr. at 64, Pl.'s Exhibit List Ex. 27, Docket No. 52.)

At approximately 9:00 pm, Ackert and Oien left the 7 Iron Bar and headed home to Rothsay. (Pl.'s Br. in Opp'n at 17, Docket No. 38.) Ackert was driving. (Ex. 1 at 2, Docket No. 39.) Approximately .3 miles from the bar, Ackert failed to stop at the stop sign at the intersection of Fourth Street North and Highway 210 in Wahpeton, and his vehicle collided with a fully loaded beet truck. (Pl.'s Br. in Opp'n at 2, Docket No. 38;

Am. Compl. ¶ III, Docket No. 11; Br. in Supp. of Mot. to Transfer Venue at 1, Docket No. 28.) Oien died at the scene of the collision, while Ackert suffered various injuries but survived. (Ex. 1 at 2, Docket No. 39.) When Ackert received medical treatment soon after the collision, "[h]e was obviously intoxicated," and his blood alcohol level was 0.25. (*Id.*; Am. Pl.'s Statement of Facts at 1, Docket No. 22.)

On the day of the collision, the 7 Iron Bar "held only a North Dakota liquor license and no other." (Defs.' Factual Statement at 1, Docket No. 20.) The State of Minnesota had issued the 7 Iron Bar a seasonal liquor license for 2008 that ended on September 30, 2008. (Fox Letter, Mar. 3, 2010, Pl.'s Statement of Case Ex. 3, Docket No. 42.) The 7 Iron Bar renewed that license effective May 19, 2009, through September 30, 2009. (*Id.*) The 7 Iron Bar carried a commercial liability policy from April 3, 2008, through April 3, 2009, listing a "Secondary Location" of 920 Oak Street in Breckenridge, Minnesota, which was "added to the policy as part of the golf course" effective May 8, 2008. (*Id.* Ex. 4.)

Cheryl Oien is a Minnesota resident. (Notice of Removal ¶ 1, Docket No. 1.) She originally filed her complaint in Otter Tail County District Court in Minnesota. (Compl., Notice of Removal Ex. A, Docket No. 1.) The complaint named as defendants Ackert and Thompson, as well as "Rob Thompson d/b/a The 7 Iron, Inc." (*Id.*) On November 2, 2009, Thompson timely removed the action to this Court. (Notice of Removal, Docket No. 1.) At the time of removal, plaintiffs had reached a settlement with Ackert and his insurance company. (Notice of Removal ¶ 3, Docket No. 1.) After removal, the parties stipulated to the dismissal of Ackert with prejudice. (Docket Nos. 7, 13.) According to

plaintiffs' counsel, "Ackert was added by mistake as a defendant. He was never served and the parties have mutually requested his voluntary dismissal from this action for all purposes." (Ellig Aff. ¶ 1, Docket No. 10.)

On December 17, 2009, plaintiffs filed an amended complaint. (Am. Compl., Docket No. 11.) The amended complaint alleges that Thompson "negligently sold intoxicating liquors to" Ackert in violation of Minnesota Statute § 340A.502 "and other pertinent statutes and laws." (*Id.* ¶¶ II, VI-VII.) On March 12, 2010, Thompson filed a motion to transfer the case to the United States District Court for the District of North Dakota. (Docket No. 26.)

## ANALYSIS

### I. MOTION TO TRANSFER

Thompson moved to transfer under 28 U.S.C. § 1404(a), which states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."[1] The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted). "[T]he party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).

---

[1] The parties do not dispute that this action "might have been brought" in the District of North Dakota. *Cf. Van Dusen v. Barrack*, 376 U.S. 612, 624-25 (1964).

In considering a motion brought under § 1404(a), courts are to balance "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Id.* at 691. These factors merit "individualized, case-by-case consideration," in which courts "weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The movant must "show that the balancing of the . . . factors strongly favors transfer." *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996) (internal quotation marks omitted).

### A. Convenience of the Parties

The first factor is neutral or weighs slightly against transfer. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645-46. Therefore, "[t]o prevail on a motion to transfer, the movant must show that his inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999). Thompson has failed to make such a showing.

In evaluating the convenience of the parties, courts may consider the location of the two courthouses and the travel expenses that the parties "would likely incur . . . for airfare, meals and lodging, and losses in productivity from time spent away from work." *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (per curiam). Cheryl Oien lives in Rothsay, Minnesota. (Pl.'s Initial Rule 26(a)(1) Disclosures at 1, Pl.'s Statement of Case

Ex. 23, Docket No. 48.) Rob Thompson lives in Wahpeton, North Dakota, where the 7 Iron Bar is located. (*Id.*)

Thompson has not offered any reason that it would be more convenient for him to litigate in North Dakota than in Minnesota. The federal courthouse in Fergus Falls, Minnesota, is located 26.85 miles directly east of Wahpeton, North Dakota on highway 210. (*See* Pl.'s Statement of Case Ex. 22, Docket No. 48.) The nearest federal courthouse in North Dakota is located in Fargo, which is 56.54 miles north of Wahpeton. (*Id.*) To the extent that a distance of thirty miles should have any bearing on the Court's consideration of Thompson's convenience, the relative distances of the two courthouses from Thompson's residence weigh against transfer.[2] *See Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 200 (E.D. Pa. 2008) ("[T]he distance between the Philadelphia and Trenton federal courthouses is a negligible thirty-two miles. The convenience of the parties and witnesses and the access to proof will not be significantly impacted regardless of whether this matter is litigated in Philadelphia or New Jersey.")

    **B.**    **Convenience of the Witnesses**

The second factor is neutral or weighs slightly against transfer. "The convenience of the witnesses is an important factor for the court since it determines the relative ease of access to sources of proof." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1121 (D. Minn. 1999) (internal quotation marks omitted). The relevant considerations "include the number of essential non-party witnesses, their location and the preference of courts

---

[2] Cheryl Oien's residence in Rothsay is closer to Fergus Falls than it is to Fargo.

for live testimony as opposed to depositions." *Id.* The party seeking transfer "must clearly specify the essential witnesses to be called and must make a general statement of what their testimony will cover." *Id.* at 1122 (internal quotation marks omitted). "In determining this factor, the court must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Id.*

Thompson argues that "[o]ut of 27 potential witnesses, 18 are North Dakota residents. It would therefore be more convenient for the majority of the witnesses to have North Dakota as the forum for this litigation." (Br. in Supp. of Mot. to Transfer at 5, Docket No. 28.) Thompson does not specify the essential witnesses to be called or state the nature of their testimony. The Court therefore cannot assess the importance of the testimony of any particular witness and whether, for that witness, one forum would be more accessible and convenient than the other. Moreover, given the proximity of the two courthouses, it is difficult to conceive of a situation in which a change in venue would enhance the parties' ability to "access . . . sources of proof." *See id.* at 1121; *see also In re Volkswagen*, 545 F.3d 304, 317 (5th Cir. 2008) ("When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." (internal quotation marks omitted)).

Thompson's argument rests on the flawed assumption that all North Dakota witnesses would find the Fargo courthouse more convenient than the Fergus Falls courthouse. In assessing convenience of witnesses, the Court considers the "location" of

the witnesses, not simply the state where they reside. *See Graff*, 33 F. Supp. 2d at 1121. Plaintiffs' initial Rule 26(a)(1) disclosures identify ten North Dakota witnesses from Wahpeton, as well as several North Dakota state troopers and the North Dakota State Forensic Examiner, who works in Bismarck, North Dakota. (Pl.'s Initial Rule 26(a)(1) Disclosures at 1-2, Pl.'s Statement of Case Ex. 23, Docket No. 48.) For most of these North Dakota witnesses, Fergus Falls would be a slightly more convenient forum than Fargo.

Thompson fails to provide any support for his argument that it would be more convenient for the majority of witnesses to attend trial in Fargo, rather than Fergus Falls. This factor does not favor transfer.

### C. Interest of Justice

Courts typically consider the following factors in evaluating the interest of justice: "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law." *Terra Int'l*, 119 F.3d at 696. The parties agree that the third and fifth factors are neutral. (Br. in Supp. of Mot. to Transfer at 13, Docket No. 28; Pl.'s Br. in Opp'n at 22, Docket No. 38.)

<u>Judicial Economy</u>. This factor typically involves consideration of docket backlog and the time to disposition in the two forums. *See, e.g.*, *In re Apple*, 602 F.3d at 915. Thompson does not address these factors, but instead argues that "the administration of

- 9 -

justice is more efficiently served when the action is litigated in a forum that more clearly encompasses the locus of operative facts." (Br. in Supp. of Mot. to Transfer at 5, Docket No. 28.) Thompson presents no logical reason why transfer would promote an efficient resolution of this dispute. This factor is neutral.

Plaintiffs' Choice of Forum. "[C]ourts in this District have repeatedly found that deference to the plaintiff's choice of forum is appropriate where the plaintiff resides in the chosen forum." *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 795 (D. Minn. 2010). Nonetheless, "when the underlying events giving rise to the litigation did not occur in the forum, courts afford a plaintiff's choice of forum significantly less deference." *CBS Interactive Inc. v. Nat'l Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 408 (D. Minn. 2009) (internal quotation marks omitted). Here, however, even though the underlying events giving rise to the litigation did not occur in Minnesota, there are "relevant connection[s]" between Minnesota and the parties, "potential witnesses, [and] the dispute." *Cf. In re Apple*, 602 F.3d at 913. Plaintiffs' choice of forum is therefore entitled to more than minimal weight. *Cf. id.*; *CBS Interactive*, 259 F.R.D. at 408 ("But 'less' deference does not mean 'no' deference, and Defendants must still overcome a presumption in favor of [the plaintiff's] selection of Minnesota as a litigation forum." (internal quotation marks omitted)).

Thompson argues that plaintiffs' choice of forum is not entitled to deference for two reasons. First, he argues that plaintiffs' actual choice of forum was not this Court, but state court. (Br. in Supp. of Mot. to Transfer at 12-13, Docket No. 28.) In *Deist v. Washington University Medical Center*, the United States District Court for the Southern

District of Illinois concluded that the plaintiffs' choice of forum was entitled to less deference, noting in passing that "this Court is not the plaintiffs' chosen forum, as they initially filed suit in state court and the case is here on removal." 385 F. Supp. 2d 772, 774 (S.D. Ill. 2005).

The Court rejects the contention that a plaintiff's choice of forum is entitled to less deference in the § 1404(a) analysis if the plaintiff initially filed suit in state court. It would be illogical to so incent plaintiffs to file diversity cases in federal court in the first instance. First, such an incentive could result in an increase in the number of cases filed in federal court with a dubious jurisdictional basis. Second, such an incentive could undermine interests of comity and could detract from the opportunities that state courts have to decide questions of state law. *See Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323, 2336 (2010). More fundamentally, § 1404(a) is "a federal judicial housekeeping measure, dealing with the **placement of litigation**." *Van Dusen*, 376 U.S. at 636. Whether the plaintiff initially elected to place the litigation in state or federal court is of little import in the § 1404(a) analysis, which involves primarily an examination of convenience factors based on geography. If the plaintiff elected to place the litigation in a particular state, then that choice is entitled to deference, regardless of whether the plaintiff initially elected to place the litigation in a state or federal courthouse in that state.

Second, Thompson argues that plaintiffs' choice of forum is entitled to less weight because it appears that they have engaged in forum shopping. (Br. in Supp. of Mot. to Transfer at 13, Docket No. 28.) Thompson suggests that the fact that the complaint filed

in state court originally named Ackert – a Minnesota resident – as a defendant is evidence that plaintiffs were engaging in forum shopping by attempting to block removal. Here, however, the undisputed evidence shows that Ackert was named as a defendant by mistake, and plaintiffs have never argued that removal was improper.

In summary, the Court finds that plaintiffs' choice of forum is entitled to more than minimal deference. This factor therefore weighs against transfer.

<u>Parties' Ability to Enforce a Judgment</u>. Thompson argues that this factor hinges on the Court's determination of whether the cause of action is governed by Minnesota or North Dakota law. (Br. in Supp. of Mot. to Transfer at 13, Docket No. 28.) Thompson does not argue that he would have any difficulty enforcing a judgment in his favor rendered in Minnesota. Instead, he argues that if plaintiffs obtain a judgment in their favor based on Minnesota law, "it is uncertain whether the North Dakota courts would enforce such a judgment." (*Id.* at 13-14.) Plaintiffs argue that they do not anticipate any difficulty in enforcing a judgment rendered by this Court. (Pl.'s Br. in Opp'n at 22, Docket No. 38.) If there is some risk to plaintiffs that they will not be able to enforce a judgment in her favor, that is a risk they have elected to take. The interest of justice does not support transfer based on this factor.

<u>Conflict of Law Issues</u>. Thompson argues that this factor supports transfer because "North Dakota law should be found to govern the action." (Br. in Supp. of Mot. to Transfer at 6, Docket No. 28.) The Court disagrees with Thompson's argument.

Both parties argue that a conflict of law exists. (Pl.'s Br. in Opp'n at 10, Docket No. 38.) By "conflict of law," the parties seem to mean that the Court's determination of

the source of the substantive law governing plaintiffs' cause of action against Thompson is potentially outcome determinative. In that respect, the parties are correct.

The parties correctly conclude that if North Dakota substantive law governs plaintiffs' claim, the claim must fail. Plaintiffs concede that "[t]here is no remedy under North Dakota law based upon the facts of this case. North Dakota law specifically carves out an exception for an adult passenger injured while riding with an intoxicated driver and the injured or deceased passenger's spouse and heirs are barred from recovery." (Am. Pl.'s Statement of Facts at 2, Docket No. 22.) North Dakota's Dram Shop statute bars relief on behalf of the estate of an adult passenger in an automobile driven by an intoxicated person:

> Every spouse, child, parent, guardian, employer, or other person who is injured by any obviously intoxicated person has a claim for relief for fault . . . against any person who knowingly disposes, sells, barters, or gives away alcoholic beverages to . . . an obviously intoxicated person, and if death ensues, the survivors of the decedent are entitled to damages defined in section 32-21-02. No claim for relief pursuant to this section may be had on behalf of the intoxicated person nor on behalf of the intoxicated person's estate or personal representatives, **nor may a claim for relief be had on behalf of an adult passenger in an automobile driven by an intoxicated person or on behalf of the passenger's estate or personal representatives**.

N.D. Cent. Code § 5-01-06.1 (emphasis added). Minnesota's Dram Shop statute does not contain such an exception. *See* Minn. Stat. § 340A.801, subd. 1 ("A spouse, child, parent, guardian, employer, or other person injured in person, property, or means of support, or who incurs other pecuniary loss by an intoxicated person or by the intoxication of another person, has a right of action in the person's own name for all damages sustained against a person who caused the intoxication of that person by

illegally selling alcoholic beverages."). Therefore, if Minnesota substantive law governs, plaintiffs can state a claim against Thompson.

A Court will eventually need to determine whether Minnesota or North Dakota law governs plaintiffs' claim. Regardless of whether this Court or the federal court in Fargo makes that determination, any choice-of-law issues will be resolved under Minnesota law. "[W]here the defendants seek transfer [under § 1404(a)], the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen*, 376 U.S. at 639. The same principle holds true for choice-of-law analysis. "Under *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), a court ordinarily must apply the choice-of-law rules of the State in which it sits. However, where a case is transferred pursuant to 28 U.S.C. § 1404(a), it must apply the choice-of-law rules of the State from which the case was transferred." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 243 n.8 (1981) (parallel citations omitted).

Although there is an issue regarding whether Minnesota's Dram Shop statute applies to the facts of this case, this issue is not a "conflict of law issue[]" that would warrant transfer to the District of North Dakota "in the interest of justice." *See Terra Int'l*, 119 F.3d at 696. Because either court would apply Minnesota law to resolve this issue, this factor weighs slightly against transfer.

Advantages of Having a Local Court Determine Questions of Local Law. In the context of a motion to transfer under § 1404(a), the general view is "that courts can just

- 14 -

as easily apply the law of another state as easily as their own." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (internal quotation marks omitted). "[W]here the legal questions involved are relatively simple . . . the familiarity-with-applicable-law factor is afforded little weight." *Advanced Logistics Consulting, Inc. v. C. Enyeart LLC*, No. 09-720, 2009 WL 1684428, at *6 (D. Minn. June 16, 2009) (internal quotation marks omitted).

Here, however, the critical legal question is far from simple. The central issue at this stage of the case is whether the Minnesota Dram Shop statute can apply where the defendant served alcohol outside of Minnesota and where the collision occurred outside of Minnesota, but where the defendant obtains a seasonal license to sell alcohol in Minnesota. In *Schmidt v. Driscoll Hotel, Inc.*, the Minnesota Supreme Court concluded that a defendant could be held liable under the Minnesota Dram Shop statute for injuries resulting from a collision that took place in Wisconsin, where "all parties involved were residents of Minnesota" and the defendant "was licensed under [Minnesota's] laws." 82 N.W.2d 365, 368 (1957). In *Blamey v. Brown*, the Minnesota Supreme Court held that the provision in the Minnesota Dram Shop statute that imposes liability for injuries arising out of the sale of alcohol to a minor "cannot be applied to impose liability on a Wisconsin bar owner for an illegal sale of intoxicating liquor, especially where the sale was made in Wisconsin." 270 N.W.2d 884, 890 (1978), *abrogated on other grounds by W. Am. Ins. Co. v. Westin, Inc.*, 337 N.W.2d 676 (Minn. 1983). Central to the court's conclusion was the fact that the Dram Shop statute appears as part of "a comprehensive scheme for regulating Minnesota's liquor industry." *Id.* at 889. The court further

concluded that the plaintiff could bring a common-law cause of action for negligence under Minnesota law. *Id.* at 890-91.

In light of these precedents, the facts of this case will require the Court to address an unresolved question of Minnesota law. Ackert consumed the alcohol in North Dakota and the collision took place in North Dakota, but Ackert and Michael Oien were Minnesota residents. Thompson is, albeit only seasonally, and not at the time of the collision, licensed under Minnesota's laws to serve alcohol and subject to the statutory scheme that regulates Minnesota's liquor industry. The 7 Iron Bar's commercial liability policy in effect at the time of the collision included a "Secondary Location" in Minnesota which had been "added to the policy as part of the golf course." The initial question before the Court will be whether the Minnesota Legislature intended the Dram Shop statute to apply under these unusual circumstances. *Cf. id.* at 889 ("Defendant argues, however, that it is unnecessary to invoke the choice of law principles since the legislature did not intend the Minnesota Civil Damage Act to impose liability upon a Wisconsin bar owner for an allegedly illegal sale of intoxicating liquor which took place in Wisconsin. . . . We agree with defendant."). This "uncertainty in transferor state law" weighs against transfer. *Van Dusen*, 376 U.S. at 646.

Thompson argues that because North Dakota law applies to this action, "the North Dakota Federal Court would be the court familiar with the law applicable and this factor, therefore, weighs in the favor of North Dakota as the proper forum for this case." (Br. in Supp. of Mot. to Transfer at 15, Docket No. 28.) Plaintiffs concede, however, that they have "no remedy under North Dakota law based upon the facts of this case." (Am. Pl.'s

Statement of Facts at 2, Docket No. 22.)  Therefore, if North Dakota law governs plaintiffs' claim, the Court will dismiss the case and there will be no occasion to apply North Dakota law at all.  To the extent that there is some advantage to having a local court determine questions of questions of local law, the relevant questions of law are questions of Minnesota law.  This factor therefore weighs against transfer.

In summary, the Court has considered all relevant factors and the particular circumstances of the case, including the convenience of the parties, the convenience of the witnesses, and the interest of justice, and concludes that Thompson has not met his burden of showing that the relevant factors and circumstances strongly favor transfer to the District of North Dakota.

**ORDER**

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Rob Thompson's Motion to Transfer Venue [Docket No. 26] is **DENIED**.

DATED:  July 26, 2010  
at Minneapolis, Minnesota.

    ____s/ John R. Tunheim____  
    JOHN R. TUNHEIM  
    United States District Judge